J-A25007-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANDRAY COTTLE, | : | |
| | : | |
| Appellant | : | No. 2225 EDA 2013 |

Appeal from the Judgment of Sentence March 20, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0008226-2012

BEFORE:  DONOHUE, WECHT and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED OCTOBER 10, 2014**

Andray Cottle ("Cottle") appeals from the judgment of sentence entered following his convictions of prohibited possession of a firearm, carrying a firearm without a license and possession of a controlled substance.[1]  We affirm.

The trial court summarized the facts underlying Cottle's convictions as follows:

> Police Officer Kevin McGrorty and his partner, Officer Fenny, were on duty in an unmarked car in the area of the 600 block of Garland Street in Philadelphia on June 20, 2012 around 9:25 p.m. Notes of Testimony ("NT"), 11/21/13 at 6-8. This block is two lanes with cars going both ways down the street. *Id.* at 9. The officers were traveling eastbound when they observed a black Monte Carlo, being driven by [Cottle], widely pull out of a legal parking spot on the side of the road without using a turn signal. *Id.*

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1); 35 P.S. § 780-113(a)(16).

*Retired Senior Judge assigned to the Superior Court.

at 7. [Cottle] pulled out so widely that 'he went into oncoming traffic,' causing 'a hazardous condition for other vehicles.' *Id.* at 8. This forced an oncoming vehicle to swerve out of the way, to avoid being hit. *Id.* at 9. In fact, [Cottle] cut off the police cruiser, causing the officers to slow down to avoid an accident. *Id.*

The officers activated their lights and sirens and pulled [Cottle] over. [*Id.*] at 9. There were four passengers in total in the vehicle:[Cottle], a front seat passenger, and two passengers in the rear. *Id.* McGrorty approached the driver side while his partner approached the passenger side. *Id.* at 9. The windows to the Monte Carlo were heavily tinted so McGrorty ordered the windows down. *Id.* As the windows went down, McGrorty smelled a fresh, strong odor of burnt marijuana. *Id.* at 10. The officer then asked [Cottle] for his driver's license, registration and insurance. *Id.* [Cottle] produced a valid state ID to the officer, along with his registration. *Id.* at 10, 15. The officer again requested the insurance. *Id.* [Cottle] then proceeded to reach towards the glove box. *Id.* He touched the glove box with his fingers, but did not open it. *Id.* He reached his hand back, looked over to McGrorty, and stated that he did not have insurance. *Id.* at 10, 28. [Cottle] 'fumbled over his words. He didn't know what to say at that point.' *Id.* at 28. This prompted Fenny, who was standing at the passenger side of the vehicle, to notify McGrorty that when the officers were first approaching the vehicle he had observed the passenger shut the glove box and reach under the passenger seat. *Id.* at 10-11.

McGrorty had been on the force for four years. *Id.* at 14. He had been assigned to the second district, where this incident occurred, for over three years. *Id.* During his tenure with the Philadelphia Police Department, he had made fifteen to twenty arrests for gun violations. *Id.* About half of those arrests were from vehicle stops where firearms were recovered. *Id.* The officer described the area in and

around the 700 block of Garland Street as a known 'hot spot' with numerous shootings. *Id.*

For their safety, the officers then removed both [Cottle] and the front seat passenger. *Id.* at 11. Next McGrorty went over to the passenger side of the vehicle and observed a burnt marijuana cigar under the seat. *Id.* at 12. The officer then decided to remove the two backseat passengers. *Id.* at 13. The Monte Carlo is a two-door sedan. *Id.* 11. Therefore, the these passengers had to exit the vehicle through the front. *Id.* Consequently, McGrorty did a cursory safety check of the front of the vehicle. *Id.* at 13. Upon opening the glove box, he found a .9 millimeter Ruger loaded with seventeen rounds and a second magazine loaded with eight live rounds . *Id.* The parties stipulated that [Cottle] was ineligible to possess a handgun on the day of the incident. *Id.* at 55-[5]6. After the gun was recovered, [Cottle] was arrested. *Id.* at 16. The officers also recovered $237 U.S. currency from [Cottle]—eleven $20 bills, one $5 bill, and twelve $1 bills. *Id.* at 49.

McGrorty then contacted Sergeant Barclay, who arrived on location and requested a K-9 unit. *Id.* at 49. The K-9 officer and dog arrived, and the dog began barking, scratching, and attempting to bite open the door of the Monte Carlo, indicating a positive reaction for drugs. *Id.* at 16-17, 25. McGrorty then contacted the Narcotics Strike Force and a search warrant was secured and executed on the car. *Id.* at 17-18. Recovered from the vehicle was the marijuana blunt under the passenger seat and loose marijuana from the floor of the passenger side. *Id.* at 18. Additionally, officers found a bag containing forty-eight jars of marijuana inside the trunk of the vehicle, as well as a First Judicial Traffic ticket in the name of [Cottle] which had been issued prior to the date in question . *Id.* at 18, 54.

Trial Court Opinion, 11/26/13, at 1-2.

J-A25007-14

Cottle filed a motion seeking to suppress the items recovered from the vehicle. After a hearing, the trial court denied Cottle's suppression motion and the case moved immediately to a bench trial. The trial court ultimately found Cottle guilty of the above-mentioned crimes and sentenced him to three to six years of incarceration, followed by two years of probation. This timely appeal followed.

Cottle presents two issues for our review:

1. Was the warrantless search of the glove box inside the vehicle [Cottle] was driving improper, such that all of the evidence recovered as a result of the search should have been suppressed?

2. Was the evidence adduced at trial legally insufficient to support [Cottle's] convictions for firearms offenses and possession of a controlled substance?

Appellant's Brief at 4.

Cottle first challenges the trial court's denial of his motion to suppress. When reviewing denial of a suppression motion, our review is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013) (citation omitted). Additionally, since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted

- 4 -

when read in the context of the record as a whole. *Id.* We may reverse only if the legal conclusions drawn therefrom are in error. *Id.*

Cottle contends that the officers' warrantless search of the vehicle's interior was impermissible because they did not have reasonable suspicion to believe that Cottle or any other occupant of the vehicle had a weapon, and therefore, the trial court erred in denying his suppression motion. Appellant's Brief at 10.

> Until recently, in order for police officers to conduct a lawful search of an automobile without a warrant, the officers were required to have probable cause and exigent circumstances. However, recently, our Supreme Court … removed the dual requirement of probable cause and exigency for a warrantless search of an automobile in Pennsylvania. In ***Commonwealth v. Gary***, [] 91 A.3d 102 (Pa. 2014), our Supreme Court held as follows:

> > In sum, our review reveals no compelling reason to interpret Article I, Section 8 of the Pennsylvania Constitution as providing greater protection with regard to warrantless searches of motor vehicles than does the Fourth Amendment. Therefore, we hold that, in this Commonwealth, the law governing warrantless searches of motor vehicles is coextensive with federal law under the Fourth Amendment. The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required. The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a per se exigency allowing police officers to make

- 5 -

> the determination of probable cause in the first instance in the field.
>
> ***Gary***, 91 A.3d at 138 (emphasis added). Thus, the salient question for the suppression court [is] whether the police officers had probable cause to conduct the warrantless search.

***Commonwealth v. Hudson***, 92 A.3d 1235, 1241-42 (Pa. Super. 2014).

In this case, the evidence establishes that the officers pulled over Cottle's vehicle for traffic violations (including failing to use a turn signal when pulling out of a parking place and driving in an on-coming lane of traffic). As they approached the car and Cottle lowered the window, Officer McGrorty smelled freshly burnt marijuana. N.T., 11/21/11, at 7-10. This provided probable cause that criminal activity (i.e., the ingestion of an illegal substance) was afoot, establishing probable cause for the search of the vehicle. ***See Commonwealth v. El***, 933 A.2d 657, 661 (Pa. Super. 2007), *aff'd*, 602 Pa. 126, 977 A.2d 1158 (2009) ("The standard for probable cause is whether the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonably cautious person to believe that an offense has been or is being committed."). Accordingly, as there was probable cause to conduct the warrantless search, we find no error in the trial court's ruling.[2]

_____

[2] We note that in contrast to the analysis we have employed, the trial court explained its ruling in terms of the prior standard for warrantless searches of automobiles. Trial Court Opinion, 11/26/13, at 4-6. However, "[i]t is well settled that where the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied

In his second issue, Cottle challenges the sufficiency of the evidence establishing his possession of the firearm or drugs found in the vehicle.

> When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the fact[-]finder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the fact[-]finder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010).

The trial court found that Cottle had constructive possession of both the firearm and the marijuana found in the vehicle's trunk. Trial Court Opinion, 11/26/13, at 9-10.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as 'conscious dominion.' We subsequently defined 'conscious dominion' as 'the power to control the contraband and the intent to exercise that control.' To aid application, we have held that constructive possession may be established by the totality of the circumstances.

---

upon by the lower court itself." *Commonwealth v. Singletary*, 803 A.2d 769, 772-73 (Pa. Super. 2002).

*Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citation omitted).

The evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the Commonwealth, established that the vehicle Cottle was driving on the night in question belonged to his fiancée, Tahyna Jimenez. N.T., 11/21/12, at 58. The car had deeply tinted windows through which the officers could not easily see. *Id.* at 9-10. When pulled over and asked for his license, registration and insurance information, Cottle gave Officer McGrorty a state issued identification card and the vehicle's registration, but no proof of insurance. *Id.* at 10. Officer McGrorty again asked for the insurance card. *Id.* Cottle then reached across the vehicle, touched the glove box, paused, pulled his hand away from the glove box and told Officer McGrorty that he did not have insurance. *Id.* At that point, Officer Finney told Officer McGrorty that as they were approaching the vehicle, he saw the person seated in the passenger seat shut the glove box and reach under the seat. *Id.* at 10-11. The firearm was found, fully loaded with 17 rounds of ammunition, in the glove box, along with another magazine loaded with eight rounds of ammunition. *Id.* at 13. The firearm, like the vehicle, belonged to Cottle's fiancée. *Id.* at 59. She kept the firearm in an unlocked case in the home she shares with Cottle and their children. *Id.* at 68-69. Cottle knew that his fiancée owned this gun. *Id.* at 65. Cottle's fiancée did not know any of the other people that were in her

vehicle when Cottle was stopped by the police. *Id.* at 69. Cottle's fiancée denied knowing anything about the marijuana found in the passenger compartment or trunk of her car. *Id.* at 63. The marijuana in the trunk was found in a bag that also contained Cottle's driver's license and a ticket issued in his name. *Id.* at 54, 63.

We conclude that this evidence is sufficient to establish an inference that Cottle's possession of the items at issue was more likely than not, and that he had "the power to control the contraband and the intent to exercise that control." *Cruz*, 21 A.3d at 1253. Cottle knew of his fiancée's firearm. It was kept in an unlocked case in his home, allowing for easy access thereto. The gun was fully loaded and found with additional ammunition. It was found in a location that Officer Finney saw the passenger access moments before the vehicle's tinted windows were rolled down. Under the gaze of Officer McGrorty, Cottle reached for the glove box but stopped short of opening it. The totality of these circumstances give rise to the inference that Cottle brought the gun into the vehicle and that he had the passenger place the gun and ammunition in the glove box as the police approached the car. Furthermore, the fact that Cottle's driver's license and a traffic citation issued to him were found with the bag containing the 48-individually packaged bottles of marijuana in the trunk of the vehicle supports the inference that Cottle constructively possessed the marijuana recovered from the vehicle.

In support of his argument to the contrary, Cottle attempts to analogize the facts of his case to the facts in **Commonwealth v. Juliano**, 490 A.2d 891 (Pa. Super. 1985) and **Commonwealth v. Boatwright**, 4523 A.2d 1058 (Pa. Super. 1982), in which this Court found the evidence insufficient to establish constructive possession. Cottle's argument is unavailing, as these cases are readily distinguishable.

**Juliano** involved a situation where police, alerted by an informant, observed two targets as they picked up luggage containing illegal drugs at Philadelphia International Airport. Before the targets collected the luggage from baggage claim, they observed them speaking with a third man. When the targets left the airport, with the luggage, they drove a short distance to a hotel, where they picked up the third man and the appellant, Juliano. The police subsequently pulled the car over and arrested the occupants. The trial court concluded that Juliano constructively possessed the luggage, which had been found "in front of the left rear seat which [he] had been occupying." **Juliano**, 490 A.2d at 893. This Court reversed that determination because there was no evidence that established – directly or by inference – that the appellant knew what the bag contained. **Id.** at 894. In contrast, as outlined above, the evidence sufficiently supports the finding that Cottle knew of and exercised control over both the firearm and the marijuana.

In **Boatwright**, the police received a radio call reporting three "suspicious" men sitting in a car at a particular location. Officers responded and as they approached the vehicle, they observed Boatwright, who was seated in the front passenger's seat, "moving towards his left rear. The officer could not see appellant's hand or arm, only a movement of his body." **Boatwright**, 453 A.2d at 1058. After removing Boatwright from the vehicle, the officer observed a firearm on the left rear floor of the vehicle. There were also men seated in the driver's seat and the left rear seat. The car was registered to the driver's girlfriend and the firearm was registered to a woman unknown to any of the men. We concluded that these facts could establish no more than Boatwright's mere presence at the scene where the gun was found, and that mere presence was not sufficient to establish constructive possession. **Id.** at 1059. These facts are markedly different from the facts of the present case, in which there is evidence tying Cottle to the firearm, the vehicle, and the marijuana discovered in the vehicle's trunk; in other words, evidence beyond Cottle's mere presence at the scene where the contraband was discovered.[3]

Judgment of sentence affirmed.

---

[3] To the extent that Cottle's arguments are based on his girlfriend's testimony that she left the firearm in the glove box, we note that the trial court expressly rejected this testimony as incredible. **See** Trial Court Opinion, 11/26/13, at 9. Accordingly, we are bound by this credibility determination. **See Commonwealth v. Lutes**, 793 A.2d 949, 960 (Pa. Super. 2002).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2014